UNITED STATES of America, Plaintiff–Appellee,

v.

Edward Lee CATES, Defendant–Appellant.

No. 90–2918.

United States Court of Appeals, Fifth Circuit.

Jan. 31, 1992.

---

Robert W. Sneed, Jackson, Miss., for defendant-appellant.

Paula C. Offenhauser, Asst. U.S. Atty., Stephen Morris, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before POLITZ, Chief Judge, KING, and JOHNSON, Circuit Judges.

KING, Circuit Judge:

Edward Cates appeals the district court's denial of his motion under 28 U.S.C. § 2255 to set aside his convictions and sentences. Cates had pled guilty pursuant to a plea agreement with the prosecutor. He alleges in this collateral attack that the government breached the plea agreement, and that the sentencing court failed to permit him to withdraw his plea. The district court found that no breach had occurred and that Cates was not entitled to withdraw his plea. Since the record on appeal supports this finding, we affirm the district court's denial of Cates's § 2255 motion.

## I. BACKGROUND

Edward Cates pleaded guilty to one count of wire fraud (count one) and four counts of bank larceny (counts two-five) pursuant to a plea agreement which provided that the government would recommend a ten-year cap on any sentence of imprisonment, and would file no further charges against Cates. The terms of that agreement, including the recommended ten-year cap, were before the district court at the sentencing hearing. The government spoke at sentencing regarding the serious-

ness of Cates's crimes, his prior criminal history, and his failure to cooperate, but did not orally recommend a particular sentence.

The court sentenced Cates to five years imprisonment on count one, ten years each for counts two through five, with counts two and three to run consecutively, and the remaining terms to run concurrently with counts two and three—a total of twenty years imprisonment. The court also assessed a $1,000 fine for each count and a total of $100,000 restitution. Cates did not appeal his sentence.

Cates later filed a motion under former Fed.R.Crim.P. 35, requesting a reduction of his sentence to ten years or less.[1] The government opposed the motion, stating, "the sentence imposed was totally justified." The court denied the motion without stating reasons.

Cates then filed this § 2255 motion. The magistrate found that the government had not breached the plea agreement and that Cates was not entitled to withdraw his plea following sentencing; the magistrate recommended that Cates's motion be denied. The district court adopted the magistrate's findings and denied the motion. Cates timely appeals.

## II. DISCUSSION

### A. Scope of § 2255

On the court's own motion, we requested additional briefing on whether and how the narrow scope of the § 2255 remedy, see *Hill v. United States*, 368 U.S. 424, 427–28 & n. 5, 82 S.Ct. 468, 470–71 & n. 5, 7 L.Ed.2d 417 (1962), affects this case. The role of § 2255 is clear:

> Section 2255 ... provides that a prisoner in custody under sentence of a federal court may file a motion in the "court which imposed the sentence to vacate, set aside or correct the sentence." The statute states four grounds upon which such relief may be claimed: (1) "that the sentence was imposed in violation of the

Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence "is otherwise subject to collateral attack."

*Hill*, 368 U.S. at 426–27, 82 S.Ct. at 470–71. The scope of the remedy under § 2255 is commensurate with that of the writ of habeas corpus. *Id.* at 428 n. 5, 82 S.Ct. at 471. In this case, Cates alleges that his plea of guilty was involuntary, and thus in violation of the Due Process Clause of the U.S. Constitution, because it was based in part on conditions unfulfilled by the prosecutor and judge.

■ It is well settled that a guilty plea based on a breached plea agreement is subject to collateral attack under the writ of habeas corpus. "[W]hen the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand[.]" *Mabry v. Johnson*, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984) (citing *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971)). "The law is clear that an unkept plea bargain is a valid basis for the grant of the writ of habeas corpus...." *Hayes v. Maggio*, 699 F.2d 198, 203 (5th Cir.1983) (citing *Blackledge v. Allison*, 431 U.S. 63, 76, 97 S.Ct. 1621, 1630, 52 L.Ed.2d 136 (1977)); *see also Smith v. Blackburn*, 785 F.2d 545, 548 (5th Cir.1986).

Such a plea is also necessarily subject to collateral attack under § 2255. "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack." *Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962); *see also United States v. Birdwell*, 887 F.2d 643, 645 (5th Cir.1989); *United States v. McCord*, 618 F.2d 389, 392 (5th Cir.1980); *accord United States v.*

---

1. Rule 35 has subsequently been amended, but the rule in effect for offenses committed before November 1, 1987 permitted a defendant to move for a reduction of sentence within 120 days after the sentence was imposed.

*Quan,* 789 F.2d 711, 713 (9th Cir.), *cert. dismissed,* 478 U.S. 1033, 107 S.Ct. 16, 92 L.Ed.2d 770 (1986); *Knight v. United States,* 611 F.2d 918, 921 (1st Cir.1979).

### B. Breach of the Plea Agreement

On appeal, Cates alleges four separate breaches of the plea agreement by the government. First, he contends that the government, at the sentencing hearing, provided inaccurate information regarding Cates's cooperation. Second, he contends that the government's opposition to his Rule 35 motion constitutes a breach of the government's promise to recommend a ten-year maximum sentence. Third, he argues that the comments made by the prosecutor at the sentencing hearing constitute a further breach of the same promise. Finally, he contends that the government failed to fulfill its affirmative obligation to recommend a ten-year cap on his sentence.[2] We address these claims in turn.

#### 1. Preliminary matters

■ The first two issues are easily disposed of. Cates's argument regarding the government's provision of information about his cooperation is not cognizable as a breach of the plea agreement. The plea agreement included no terms requiring Cates's cooperation or requiring the government to refrain from commenting on any aspect of Cates's cooperation. The fact that the government presented information to the court regarding Cates's lack of cooperation is entirely irrelevant to the plea agreement's validity. Cates presents no other basis for his challenge to the government's provision of information regarding his cooperation.[3]

■ Cates did not raise the Rule 35 contention before the district court in his § 2255 motion. We will not consider for the first time on appeal an argument not presented to the district court. *Earvin v. Lynaugh,* 860 F.2d 623, 627–28 (5th Cir.

1988), *cert. denied,* 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 861 (1989); *United States v. Houston,* 745 F.2d 333, 334 (5th Cir.1984), *cert. denied,* 470 U.S. 1008, 105 S.Ct. 1369, 84 L.Ed.2d 388 (1985); *Hall v. Maggio,* 697 F.2d 641, 643 (5th Cir.1983); *United States v. McKnight,* 693 F.2d 476 (5th Cir.1982).

#### 2. The government's comments at sentencing

■ At the sentencing hearing, the government argued that Cates's prior record suggested that rehabilitation and deterrence were not meaningful determinations in arriving at an appropriate sentence. The prosecutor also asserted: "It seems to me that Mr. Cates has in his head, in the words of Auden, 'I like committing crimes. It seems the system likes forgiving them. Really, the world is admirably arranged.' ... [P]rotection of the public is probably the only consideration that can be served at this stage."

The magistrate found that "[t]his language does not infer [sic] that a ten year sentence would be insufficient." The record supports this conclusion, as does simple logic. The prosecutor's comments did not recommend or suggest a sentence of longer than ten years. The comments, in conjunction with the recommendation of a ten-year cap, suggest that the government hoped the judge would impose the maximum sentence rather than any amount less than ten years. The government's asserted interest in protection of the public presumably would have been served by the recommended ten-year sentence.

We note also that Cates's argument in this respect resembles the claim disposed of by the Supreme Court in *United States v. Benchimol,* 471 U.S. 453, 455, 105 S.Ct. 2103, 2104–05, 85 L.Ed.2d 462 (1985). There, the Court held that an agreement to recommend a particular sentence did not require the government to state the justifi-

---

**2.** The government does not dispute that the meaning of the term "ten-year cap" is a maximum of ten years total imprisonment for all counts.

**3.** Indeed, any nonconstitutional, nonjurisdictional argument which could have been raised on direct appeal would be beyond the scope of this § 2255 motion. *United States v. Stumpf,* 900 F.2d 842, 845 (5th Cir.1990).

cation for that sentence, or to argue for the sentence "enthusiastically," when the plea agreement did not so provide. The Court held that a plea agreement must be fulfilled by the parties, but that the measure of compliance would be the agreement's express terms, not any "implied-in-law" terms read into the agreement by later courts. *Id.* In the light of *Benchimol,* we cannot hold that the government's promise in this case—to "recommend at sentencing a ten-year cap be [sic] appropriate"—precluded the prosecutor from arguing for a strict, yet indeterminate, term of imprisonment.

### 3. Recommendation of a ten-year cap

Cates argues that the government breached the express terms of his plea agreement because it failed to recommend a ten-year cap on his sentence at the sentencing proceeding. The magistrate found that "the recommended sentence was presented to the Court at sentencing;" elsewhere the magistrate stated "[t]he recommended sentence was clearly before the court even though not repeated vocally." The magistrate's findings were adopted by the district court.

▉ We review the district court's factual findings in a § 2255 proceeding for clear error. *United States v. Casiano,* 929 F.2d 1046, 1051 (5th Cir.1991); *United States v. McCord,* 664 F.2d 60, 62 (5th Cir.1981). The clear error standard applies equally to findings made by a magistrate and adopted by the district court. *Carter v. Collins,* 918 F.2d 1198, 1203 (5th Cir. 1990); *Hall,* 697 F.2d at 643. In this case, the record clearly supports the magistrate's findings. We briefly review that evidence below.

▉ The magistrate noted that "[t]he recommended sentence was clearly before the [sentencing] Court...." The record reflects that the recommended ten-year cap was prominently featured in all three documents before the sentencing court. The terms of the plea agreement, including the recommended ten-year cap, were set out in the written plea. The defendant's sentencing memorandum stated, in its second sentence, that "[t]he government has recommended a ten year maximum sentence, which the Court is not bound to accept." Moreover, the Presentence Report (PSR) described the terms of the plea agreement on its cover page, along with other vital information about the defendant and the charged offense.[4]

The dispute in this case seems ultimately to boil down to the meaning of the plea agreement's terms. The written agreement stated that the government "will recommend at sentencing a ten year cap...." The prosecutor repeated the terms at the rearraignment during which Cates pled guilty: "the government would recommend at sentencing a ten-year cap be [sic] appropriate...." Cates's attorney stated the terms as: "the government will recommend as an appropriate sentence a ten-year cap...." The district judge asked Cates if the latter statement was his understanding as well, and Cates replied: "Yes, that is, sir."

The question of interpretation in this case—decided implicitly by the magistrate—is whether the parties understood the phrase, "recommend at sentencing," to impose a requirement on the prosecutor to state verbally the recommendation during the sentencing hearing, or whether it was enough that the recommendation be made and before the district court during the sentencing proceeding. Although the magistrate's findings do not address this question in the same terms we do, the conclusion that "the recommended sentence was presented to the Court at sentencing" comprises an interpretation of the agreement's terms as the parties to that agreement understood them. By this interpretation, the agreement did not require a verbal statement by the prosecutor during the course of the sentencing hearing. Instead,

---

**4.** In fact, the PSR noted that the government agreed to recommend a sentence of seven years, not ten, as was actually agreed. This discrepancy, to the extent it could have affected the proceedings at all, seems to cut in Cates's favor by indicating that the recommended sentence was actually lower than ten years.

the agreement was satisfied by ensuring that the recommended ten-year cap was before the court when it considered and imposed its sentence.

This interpretation is supported by the record and the history of proceedings in this case. We note that the terms of the agreement are somewhat unclear. "Recommend at sentencing" could be—and indeed, seems to have been—taken to mean either verbal or written recommendation.[5] In such a case, the district court must determine what the parties reasonably understood to be the terms of the agreement. *United States v. Barrett*, 890 F.2d 855, 864 (6th Cir.1989); *Quan*, 789 F.2d at 713; *United States v. Read*, 778 F.2d 1437, 1441 (9th Cir.1985), *cert. denied*, 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986). Of course, the literal terms of the agreement are undisputed; they are recorded in the written plea and in the transcript of the rearraignment. Support for the magistrate's interpretation of these terms can be discerned from the parties' actions during the course of the proceedings.

At no time during the sentencing hearing or at any point thereafter—until the filing of this § 2255 motion, nearly four years later—did Cates or his attorney object to the government's actions at the sentencing proceeding. Cates did not appeal the sentence imposed. Cates did file a Rule 35 motion for reduction of sentence, but did not allege in that motion that the plea agreement had been breached. Not until nearly four years had passed did Cates challenge the government's execution of its obligations under the plea agreement.

This failure to complain of what he now contends is *the* fundamental provision in the plea agreement suggests that Cates,

his attorney,[6] and the prosecutor all shared an interpretation of the plea agreement which comports with that reached by the magistrate here. This interpretation—that the recommended ten-year cap need not be urged orally during the sentencing hearing—cannot now be said to be clearly erroneous.

Our conclusion, based in part on the circumstantial evidence of Cates's actions between the time of the sentencing hearing and this proceeding, comports with the method of analysis used by this and other courts faced with the problem of defining or interpreting the terms of a plea agreement well after it was made. *See, e.g., Baker v. United States*, 781 F.2d 85, 90 (6th Cir.), *cert. denied*, 479 U.S. 1017, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986); *United States v. Kerdachi*, 756 F.2d 349, 353 (5th Cir.1985) (Williams, J., dissenting); *McKenzie v. Wainwright*, 632 F.2d 649 (5th Cir. Unit B 1980).

### C. Plea Withdrawal

■ Cates also argues that he was denied due process because the district court advised him that he could withdraw his plea if the court declined to accept the government's recommendation, but then refused to allow him to withdraw his plea when the court did not follow the plea agreement recommendation. Cates concludes, therefore, that his plea of guilty was not voluntary.

Cates lacks a factual predicate for this argument. As the magistrate properly found, there was no such inconsistency. When a plea agreement is entered into under Rule 11(e)(1)(B)[7] for the government to make a non-binding recommendation on the court, "the court shall advise the defen-

---

5. We note also the importance of clarity and precision in formulating the terms of plea agreements. "A responsible public servant who recognizes the desirability of clarity in agreements would avoid [such vague terms]." *United States v. Read*, 778 F.2d 1437, 1441 (9th Cir. 1985), *cert. denied*, 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986).

6. It is significant, too, that Cates was represented by three different attorneys during the course of these proceedings. He retained coun-

sel during the plea negotiations, rearraignment and sentencing hearing. He was represented by an assistant public defender in his Rule 35 motion. He retained new counsel for his § 2255 motion.

7. Rule 11(e)(1)(B) provides that the government will "make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding on the court[.]" Fed.R.Crim.P. 11(e)(1)(B).

dant that if the court does not accept the recommendation or request the defendant nevertheless has *no* right to withdraw the plea." Fed.R.Crim.P. 11(e)(2) (emphasis added). Under Rule 11(e)(4), only if the court *rejects* a plea agreement, shall "the court ... afford the defendant the opportunity to then withdraw the plea."

During the plea proceedings, the parties first discussed the possibility of entering a plea agreement limiting the sentence to seven years under Rule 11(e)(1)(C).[8] Before the plea was submitted, however, the court indicated that it would not accept such a plea agreement, and the government then negotiated another agreement with Cates under Rule 11(e)(1)(B), under which it undertook to recommend a ten-year cap at sentencing. During the Rule 11 colloquy on this second plea agreement, the Court inquired of Cates whether it was his understanding that, "under these circumstances, you would not be permitted to withdraw your plea of guilty." Cates responded: "Yes."

The court assiduously determined the voluntariness of Cates's plea. Further, Cates did not make any attempt to withdraw his plea after the court did not follow the recommendation set out in the plea agreement. The court did not violate Cates's due process rights.

### III.  CONCLUSION

Finding no clear error in the district court's factual findings that the plea agreement had not been breached and that Cates was not entitled to withdraw his plea, we AFFIRM the denial of Cates's § 2255 motion.

---

**8.** Rule 11(e)(1)(C) provides that the government will "agree that a specific sentence is the appropriate disposition of the case."  Fed.R.Crim.P. 11(e)(1)(C).